**Stephen B. LOYD, Appellant,**

v.

**Jack R. Williams and, STATE AUTOMOBILE PROPERTY & CASUALTY COMPANY, Respondent.**

**No. WD 68468.**

Missouri Court of Appeals,
Western District.

Oct. 14, 2008.

plice.

James C. Johns, Clinton, MO, for appellant.

Bradley C. Nielsen, Kansas City, MO, for respondent.

RONALD R. HOLLIGER, Judge.

Stephen B. Loyd (hereinafter "Loyd") appeals the grant of summary judgment in favor of State Automobile Property & Casualty Company (hereinafter "State Auto") on his claim for underinsured motorist benefits. Loyd was injured when he "laid down" his motorcycle in an attempt to avoid a collision with a vehicle and trailer, operated by Jack Williams (Williams), that pulled in front of him. He and the motorcycle eventually separated as they slid down the road before colliding with Williams's trailer. Loyd owned the motorcycle he was driving but it was not covered under the State Auto policy. State Auto denied coverage under an exclusion in its underinsured motorist coverage for inju-

ries sustained while *"occupying"* an owned vehicle not insured under the State Auto policy (the "owned vehicle exclusion"). The parties disagreed over whether Loyd was "occupying" the motorcycle under the terms of the policy but agreed that the question was one of law. After reviewing the record and arguments of the parties, we find that the policy language was unambiguous and that Loyd was "occupying" the motorcycle as defined in the policy at the time that he was injured. We affirm the trial court's grant of summary judgment.

Loyd was involved in an auto accident with Williams on Missouri State Highway PP in Henry County. Williams was pulling a boat on a trailer southbound on PP when he made a left turn into the Hickory Hollow Resort. His turn brought him directly into the path of Loyd's Harley Davidson motorcycle. In an attempt to avoid a collision, Loyd "laid" his motorcycle down. However, Loyd and the cycle both skidded down the highway. The motorcycle struck the boat trailer, and Loyd slid under the trailer sustaining personal injuries.

Loyd had an insurance policy with State Auto insuring three automobiles (a truck and two cars). The policy did not cover the motorcycle, which was owned by Loyd. Williams had only minimum limits, and Loyd claimed damages exceeding Williams's coverage. The State Auto policy provided underinsured motorist coverage by an endorsement. The endorsement also included a so—called "owned vehicle" exclusion.

Loyd sued Williams for negligence and joined a claim for underinsured motorist coverage against State Auto. State Auto filed a motion for summary judgment contending that the owned vehicle exclusion eliminated any coverage. The dispositive question is whether Loyd was *"occupy-*

*ing"* the motorcycle at the time of his injury. If he was not occupying the motorcycle then the exclusion does not bar his claim for underinsured coverage. The trial court granted State Auto's motion, and Loyd now appeals.

### Standard of Review

"The criteria on appeal for testing the propriety of summary judgment are no different from those which should be employed by the trial court to determine the propriety of sustaining the motion initially." *ITT Commercial Fin. Corp. v. Mid–Am. Marine Supply Corp.,* 854 S.W.2d 371, 376 (Mo. banc 1993). A defending party may establish its right to judgment as a matter of law for summary judgment purposes by showing (1) "facts that negate any one of the claimant's elements facts," or (2) that the non—movant has not and will not be able to produce sufficient evidence for the finder of fact to find the existence of one of the necessary elements of plaintiff's claim, or (3) there is no genuine dispute as to the existence of the facts necessary to support the movant's properly pleaded affirmative defense. *Id.* at 381.

### Analysis

An exclusion of coverage is an affirmative defense that must be plead and proved by the insurer. *Columbia Mut. Ins. Co. v. Long,* 258 S.W.3d 469, 475 n. 4 (Mo.App. W.D.2008). The record must be viewed in the light most favorable to the non-moving party, but the movant's "[f]acts set forth by affidavit or otherwise" are taken as true unless contradicted in a responsive pleading. *ITT,* 854 S.W.2d at 376. "[I]nterpretation of an insurance policy is a question of law, and the trial court receives no deference where resolution of the controversy is a question of law." *Auto. Club Inter–Ins. Exch. v. Medrano,*

83 S.W.3d 632, 637 (Mo.App. E.D.2002). The disposition of this case turns on the interpretation of certain exclusionary language in State Auto's policy. Loyd agrees that there are no disputed issues of fact that determine the applicability of the policy exclusion.

State Auto's underinsured motorist endorsement contains the following exclusion:

A.  We do not provide Underinsured Motorist Coverage for "bodily injury" sustained:

1.  By an "insured" while *"occupying"*: ... any motor vehicle owned by that "insured" which is not insured for coverage under this policy. (quotation marks in original).

The policy defines the terms set off with quotation marks. There is no disagreement that Loyd sustained bodily injury and that he is an "insured." It is also undisputed that the motorcycle was not insured in the policy under which the underinsured motorist benefits are being claimed. The sole issue on summary judgment, therefore, was whether Loyd was "occupying" the motorcycle at the time of his injury.

The policy defines "occupying": It means "in, upon, getting in, out or off." Loyd does not argue that the underinsured motorist "owned vehicle exclusion" is ambiguous. Nor does he argue that the definition of occupying is ambiguous. Indeed, Missouri courts have held this definition to be unambiguous. *Arbuthnot v. Northern Ins. Co. of N. Y.*, 140 S.W.3d 170, 172 (Mo.App. E.D.2004).

Rather, Loyd argues that we must give the policy language its "plain meaning" and that under the facts of this case he was not "occupying" the motorcycle. He argues for a distinction based on the involuntary or voluntary nature of the driver's separation from the vehicle. Thus he argues that when the driver involuntarily separates from the vehicle, the exclusion applies; but if the separation was voluntary (as in this case) it would not and coverage would be provided. He cites one case from New Hampshire to support this assertion, because "no Missouri cases have dealt with the exact issue presented to the court." Although no Missouri court has had a case exactly like this before it, Missouri courts have considered the meaning of "occupy," and a general framework has been created to examine such cases. However, these cases involve a question of establishing coverage rather than excluding coverage.

Initially, in order to determine whether a person occupied a vehicle under similar insurance clauses, Missouri appellate courts looked to other jurisdictions and found a general inconsistency in result across jurisdictions. *State Farm Mut. Auto. Ins. Co. v. Farmer's Ins. Co.*, 569 S.W.2d 384, 385 (Mo.App.1978). This inconsistency disappears in cases such as this one where "the claimant has left the driver or passenger section of the vehicle and is injured in some reasonably close proximity to the vehicle." *Id.* In such situations, the court found that, in general, cases determining whether the exit from the vehicle caused the occupancy to continue or to end falls into two categories. *Id.*

"The first category of cases are those in which the reason for leaving the vehicle and the claimant's activities after leaving the vehicle are directly related to the ... vehicle itself." *Id.* The second includes those cases where the vehicle was merely the transportation to the point where the claimant left the vehicle, and the reason for leaving the vehicle was unrelated to the vehicle itself. *Id.* In the first instance, the term "occupying" has been liberally construed to allow coverage for claimant. *Id.*

In the second, the courts have demanded strict adherence to proof of the four definitions of occupancy (in, upon, getting in, or getting off). *Id.* Although *State Farm* was discussing occupation of an insured vehicle, the definition of "occupying" is the same, and we see no reason to treat occupation differently depending on whether the vehicle was insured or not.

Numerous courts of other states have also addressed this issue. The majority have found that a cyclist was occupying a motorcycle whether or not his ejection or separation from the cycle was voluntary or involuntary, although expressing different rationales. *See e.g. Schmidt v. State Farm Mut. Ins. Co.*, 750 So.2d 695, 696–97 (Fla. Dist.Ct.App.2000). There the court utilized a temporal test asking whether "occupancy" had terminated and a new activity had begun. Most of the cases seem to apply a causal or result approach. A number of courts have adopted a four part test described in *General Accident Insurance Co. of America v. Olivier*, 574 A.2d 1240, 1241 (R.I.1990):

(1) there is a causal relation or connection between the injury and the use of the ... vehicle;

(2) the person asserting coverage must be in reasonably close geographic proximity to the vehicle, although the person need not be actually touching it;

(3) the person must be vehicle-oriented rather than highway or sidewalk oriented at the time; and

(4) the person must also be engaged in a transaction essential to the use of the vehicle.

*See e.g. Cuevas v. State Farm Mut. Auto. Ins. Co.*, 130 N.M. 539, 28 P.3d 527, 541–42 (App.2001); *Roden v. Gen. Cas. Co. of Wisc.*, 671 N.W.2d 622, 627 (S.D.2003); *Downing v. Harleysville Ins. Co.*, 412 Pa.Super. 15, 602 A.2d 871, 874 (1992).

Although we do not adopt this test per se, it does express reasonable and sensible considerations to determine whether a person is occupying a vehicle. And it is consistent with Missouri cases that determine whether a vehicle is occupied.

Based on these rules, Loyd was occupying the motorcycle at the time of the accident. This case clearly falls into the first category. When Loyd laid down his motorcycle, he had not reached his destination. The act was related to the motorcycle itself; he laid it down in order to avoid a collision. This, along with his continued motion down the road, was directly related to the motorcycle and his effort to avoid a collision.

As a matter of law, Loyd was excluded from coverage because he was occupying an uninsured vehicle. Loyd's point is denied. The grant of summary judgment is affirmed.

JAMES M. SMART, JR., Presiding Judge, and THOMAS H. NEWTON, Judge, concur.